

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N Y

 ☆ APR 19 2012 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

ANNETTE VOGELFANG,

                          Plaintiff,

                                                    **OPINION & ORDER**
            -against-                               04-CV-1727 (SJF) (AKT)

RIVERHEAD COUNTY JAIL, SERGEANT AITKEN,
SERGEANT TURPIN, LIEUTENANT NOLAN,
OFFICER KRIS KEIRNAN, OFFICER LEFFERT,
OFFICER DOHERTY and OFFICER ENGLEHARDT,

                          Defendants.
------------------------------------X
FEUERSTEIN, J.

On April 22, 2004, *pro se* plaintiff Annette Vogelfang ("Plaintiff") commenced this

action pursuant to 42 U.S.C. § 1983 alleging constitutional violations resulting from an alleged

sexual assault by defendant Sergeant Thomas Hennessey ("Hennessey") on September 5, 2001;

an alleged beating by five (5) unnamed "John Doe" officers that same day; and an alleged assault

by defendants Lieutenant Nolan ("Nolan"), Sergeant Aitken ("Aitken"), Sergeant Turpin

("Turpin"), and Officer Keirnan ("Keirnan") (collectively, "defendants"), among others, on April

27, 2003. By opinion and order dated October 13, 2009, defendants' motion for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure was granted to the extent

that plaintiff's claims relating to the September 5, 2001 incidents were dismissed with prejudice

pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and defendants'

motion was otherwise denied. On May 25, 2010, Magistrate Judge A. Kathleen Tomlinson, *inter*

*alia*, granted plaintiff's motion to amend the complaint and added Officers Fanning, Leffert,

Doherty and Englehardt as defendants in this action. On June 22, 2010, plaintiff voluntarily

1

withdrew her claims against Fanning. On June 28, 2010, following a jury trial, judgment was entered in favor of defendants on the issue of liability. Although plaintiff filed a notice of appeal of the judgment on July 8, 2010, pending before this Court is plaintiff's motion for a new trial pursuant to Rule 50 of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiff's motion is denied.

I. Background

A. Factual Background

Plaintiff was incarcerated in the Suffolk County Correctional Facility ("SCCF" or "the jail") between July 31, 2001 and October 2, 2001, and again between December 17, 2002 and April 30, 2003. Plaintiff alleges that on September 5, 2001, she was sexually assaulted by Hennessy and then was beaten by five (5) unidentified "John Doe" officers. Plaintiff also alleges that on April 27, 2003, following her return to her "suicide watch" cell from the psychiatric emergency room at Stony Brook Hospital, and after she had scratched the inmate in the cell next to her through the bars, cut her arm with a spoon that she broken and argued with Officer Montalbano over her request for a bar of soap, Nolan, Aitken, Turpin, Keirnan, Englehardt, Doherty and Leffert, placed a spit mask over her face and assaulted her.

Plaintiff was moved from the jail to Bedford Hills State Correctional Facility on April 30, 2003, three (3) days after the last incident of which she complains. (T. 90-91).

B. Procedural History

On April 22, 2004, plaintiff commenced this action pursuant to 42 U.S.C. § 1983 alleging



violations of her Eighth Amendment right to be free from cruel and unusual punishment and her Fourteenth Amendment right to due process. In her first narrative statement of her claims, plaintiff asserted three (3) claims: (1) that she was sexually assaulted by Hennessey and beaten by "John Doe" officers on September 5, 2001; (2) that "[o]n April 27, 2003 while housed on * * * suicide watch * * *. [sic] The inmates housed [in the "suicide watch" cells] are allotted 1 hour out of their cell to utilize the shower and telephone. The tier is a constant supervision post. [sic] Where they have male officers watching the woman use the toilet and if the inmates are not on suicide watch and have clothes the male officer observes them dressing and undressing. While housed on this tier with nothing but a suicide dress and a suicide blanket, the plaintiff was denied a mattress and use of the shower for over 30 days. The plaintiff also remained in the same suicide suit for over 30 days. This to the plaintiff was a torture tactic, cruel and unusual punishment, as well as negligence on the part of [defendants] * * * because the officers in charge neglected to follow N.Y.S. rules and regulations in regard to showers and a mattress and clean clothes. [sic] As well as the 72 hour suicide procedure. [Defendants] knowingly neglected the plaintiff. * * * On the 3-11 shift on April 27, 2003 the plaintiff requested a shower and was again denied. After being denied a shower the plaintiff ask [sic] for a bar soap [sic] to wash in the cold water in her sink. The plaintiff was once again denied even a bar of soap. The plaintiff and the male officer on duty argued * * *. A total of 10 [officers] came to her 23 hour locked cell and demanded she put her hands behind her back to be cuffed, * * *. [W]hen the plaintiff turned around an unknown assailant hit [her] in her head numerous times. While another officer Lt. Nolan nearly ripped the plaintiffs [sic] arm out of the sockets, painfully and forcibly cuffed and shackled [her] * * *. After being cuffed and shackled the plaintiffs [sic] cell door opened and

3

she was dragged to the elevator on the 5th floor. The plaintiff was forced onto the elevator and was being hit by all the officers * * *. The plaintiff was brought to * * * the detention area * * * [and] was forced onto [a wooden] bench and a chain was placed around [her] body chaining her to the bench, then 2 sets of shackles were put on [her] legs. Lt. Nolan then brought in a spit mask * * *[and] placed [it] * * * on the plaintiffs [sic] face so she could not see who was beating her. First [plaintiff] was beat in the head[,] shoulders and neck areas pressure was put to all pressure points as well. The plaintiffs [sic] fingers were also separated causing severe pain but yet no break, just another pressure point used to inflict pain. The plaintiff * * * lowered her head and ripped the [spit] mask off her face * * * [and] was punched by Officer Kris Keirnan * * * in the left side of her jaw so hard that [she] was knocked out cold. When the plaintiff came to she was in a hog tied position and on her stomach * * * with the mask back on[.] * * * [A]n unknown assailant put his finger on the plaintiffs [sic] left side jaw joint * * * to cause [her] unnecessary pain. The plaintiff was also beat in her back * * * and spinal area with a hard blunt object * * * repeatedly all over her body by the officers for about 8 hours;" and (3) that on July 29, 2004, she was again housed in the jail, at which time she was assaulted by Officer Delprete, badge number 651, and an unidentified officer. (Docs. 25 and 31).

In a letter to Magistrate Judge Michael Orenstein, to whom this case was initially assigned, filed May 10, 2005, plaintiff indicated that she was claiming three (3) separate incidents: one on September 5, 2001, one on April 27, 2003 and one on July 29, 2004, and asserted that she sought compensatory and punitive damages with respect to the first two (2) incidents and that the third incident "is to be condensed with the first 2 incidents." (Doc. 26). By order dated July 8, 2005, *inter alia*, plaintiff was advised that the July 29, 2004 incident was

not at issue in this case since it occurred after plaintiff commenced this action and she had not

sought leave to amend her complaint. By letter dated July 27, 2005, plaintiff, in effect, sought

reconsideration of the July 8, 2005 order. (Doc. No. 44). By order dated August 3, 2005,

Magistrate Judge Orenstein denied plaintiff's letter application seeking reconsideration of his

July 8, 2005 order.

By order dated September 8, 2005, Magistrate Judge Orenstein noted that plaintiff had

not yet filed an amended complaint and advised her that if she sought to do so, "she must first

provide the proposed amendment to opposing counsel. If counsel consents, the amendment may

be filed, if not, the plaintiff must seek leave from the court." By order dated November 17, 2005,

Magistrate Judge Orenstein advised plaintiff, *inter alia*: (1) that if she wished to amend her

complaint, she must submit the amended pleading no later than December 8, 2005; and (2) that

any amendment to add named defendants with respect to the 2001 incident would be time-barred

and, therefore, the amended complaint may only include new defendants as to the 2003 incident.

In addition, Magistrate Judge Orenstein closed discovery as complete, with the exception of any

additional discovery that might be appropriate after defendants received plaintiff's additional

medical records.

On December 8, 2005, plaintiff filed an amended complaint to substitute identified

officers for certain "John Doe" defendants.[1] (Doc. No. 77). In the amended complaint, plaintiff:

(1) alleged that on April 27, 2003, defendants violated her Eighth and Fourteenth Amendment

---

[1] During a pretrial telephone conference before Magistrate Judge A. Kathleen Tomlinson
on May 25, 2010, to whom this case was subsequently assigned, Magistrate Judge Tomlinson,
*inter alia*, granted plaintiff's motion to amend her complaint to add Officers Fanning, Leffert,
Doherty and Englehardt as defendants in this action and deemed the amended complaint timely
filed and to be the operative pleading in this action. (Doc. No. 173).

rights by "brutally beat[ing]" her; (2) repeated almost verbatim the same two (2) claims

pertaining to the September 5, 2001 and April 27, 2003 incidents that she had set forth in her

narrative statements; and (3) omitted any claim pertaining to the July 29, 2004 incident.

On March 20, 2006, plaintiff filed a final narrative statement regarding her claims

"attest[ing] to her previous narrative statement in which she asserted the fact that [defendants]

were negligent in their duty as officers and used excessive and unnecessary force, **in that they**

**beat the plaintiff severely**. [sic] On April 27th 2003."[2] (Doc No. 96) (emphasis in original).

On May 30, 2006, defendants moved for summary judgment dismissing plaintiff's

amended complaint. (Doc. No. 101). On June 15, 2006, plaintiff cross-moved for summary

judgment. (Doc. No. 113). On July 18, 2006 and January 18, 2007, plaintiff filed statements of

her claims in opposition to defendants' motion in which she alleged two (2) claims: (1) that on

September 5, 2001, Hennessey sexually assaulted her and he and five (5) unidentified officers

beat her; and (2) that on April 27, 2003, she "was forced to utilize the toilet bowl in front of male

officers for over a 30 day period[,] * * * was not afforded hygiene care [insofar as] [she] was

wearing the same suicide dress for over 30 days [which] cause[d] [her] pain due to * * * Velcro

around the shoulder part * * * [which] irritate[d] [her] skin * * * [causing her] to remove the

dress, in front of male officers 'the upper part to stop the pain it was causing,'" was beaten by

defendants following an argument with Officer Maldonado over her request to shower or receive

a bar of soap and was deprived "of minimal civilized measures of lifes necessities * * * such as

showers[,] soap[,] mattresses [and] bedding." (Doc. Nos. 105 and 116). By opinion and order

---

[2] Plaintiff also asserted that "on September 5[th] 2001 [she] was forced to perform a
sexually degrading act on [Hennessey]." However, that claim was subsequently dismissed by
order entered October 13, 2009.

entered March 9, 2007, defendants' motion for summary judgment was granted and plaintiff's

cross motion was denied. (Doc. No. 117). Judgment was entered in favor of defendants and

against plaintiff on March 12, 2007. (Doc. No. 118). Plaintiff filed a notice of appeal of the

judgment on March 28, 2007. (Doc. No. 119).

By mandate entered February 27, 2009, the United States Court of Appeal for the Second

Circuit vacated the judgment insofar as it granted summary judgment to defendants on the basis

of plaintiff's failures to exhaust her administrative remedies, and remanded the action to this

Court for a determination of whether plaintiff's failures to exhaust should be excused. (Doc. No.

125). In its summary order, the Second Circuit noted that plaintiff "alleged that while she was

incarcerated two incidents occurred: on September 5, 2001, an officer sexually molested her and,

along with five other officers, hit her repeatedly; on April 27, 2003, after she complained about

not having soap in the shower, officers came into her cell and beat her for 'hours'."

On remand, by order dated October 13, 2009, defendants' motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure was granted to the extent that

plaintiff's claims relating to the September 5, 2001 incidents were dismissed with prejudice

pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), based upon

plaintiff's failure to exhaust available administrative remedies, and defendants' motion was

otherwise denied. Accordingly, the action was dismissed in its entirety as against Sergeant

Thomas Hennessey and the unidentified "Janes and Johns Doe" officers allegedly involved in the

September 5, 2001 incidents. On October 28, 2009, plaintiff filed a notice of appeal from the

October 15, 2009 order. (Doc. No. 140). By mandate entered April 7, 2010, the Second Circuit

dismissed the appeal as moot. (Doc. No. 169).

By order dated December 2, 2009, Magistrate Judge Tomlinson, *inter alia*, granted plaintiff's motion to reopen discovery to the extent of permitting plaintiff to submit a maximum of twenty-five (25) questions tailored to the April 27, 2003 incident to be answered under oath by defendants Nolan, Keirnan and Aitken.

At a pretrial conference before me on May 24, 2010, the parties were advised that the jury trial of plaintiff's remaining Eighth Amendment claim relating to the alleged assault on April 27, 2003 would be bifurcated and that the trial on the issue of defendants' liability for that incident was scheduled for June 14, 2010. (Doc. No. 174). On June 2, 2010, defendants submitted proposed jury instructions relating to plaintiff's Eighth Amendment excessive force claim and voir dire questions. (Doc. Nos. 184 and 185). On June 4, 2010, plaintiff filed an exhibit list and witness list, which she amended by letter filed June 8, 2010. (Doc. Nos. 192 and 194). On June 9, 2010, plaintiff filed a document entitled "proposed witness testimony." (Doc. No. 200).

Between June 14, 2010 and June 24, 2010, a six (6) day jury trial was held to determine defendants' liability, if any, on plaintiff's remaining claim relating to the April 27, 2003 incident. During the proceedings on June 22, 2010, plaintiff withdrew all of her claims against Officer Fanning. On June 24, 2010, the jury found in favor of defendants on the issue of liability with respect to plaintiff's Eighth Amendment excessive force claim pertaining to the alleged assault of her on April 27, 2003. On June 28, 2010, judgment was entered in favor of defendants and against plaintiff on the issue of liability.

On July 8, 2010, plaintiff filed a notice of appeal to the United States Court of Appeals for the Second Circuit from the June 28, 2010 judgment. Thereafter, plaintiff moved in this Court for a new trial pursuant to Rule 50 of the Federal Rules of Civil Procedure.

8

II.    Discussion

Plaintiff moves for a new trial on the grounds: (1) that "she was bamboozled by the Court," insofar as she was denied the right (a) "to tell the juror of her serious injuries sustained in the beating by Suffolk County Officers" and (b) "to present documentary evidence proving her serious injuries," whereas defendants were permitted "to provide testimony that [she] was not injured after [the April 27, 2003] incident," (Plaintiff's Rule 50 Motion for New Trial [Plf. Mot.], at 1-2); and (2) that the jury was never charged regarding the "actual occurance [sic] of injuries," (id. at 2), or her Eighth Amendment conditions of confinement claims, i.e., "that being cuffed [and] shackled for 9 hours violated her civil/constitutional rights;" "that posting a male officer in front of [plaintiff's] suicide cell for 24 hours a day for more than 30 days violated her civil rights to bodily privacy;" that "she was denied shower for over 30 days;" and that she was "denied a mattress [and] soap." (id. at 3).[3]


A.    Rule 50

Rule 50 of the Federal Rules of Civil Procedure "sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial and establishes two stages for such challenges– prior to submission of the case to the jury, and after the verdict and entry of judgment." Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 399, 126 S. Ct. 980, 163 L. Ed. 2d 974 (2006). Rule 50(a)(1) provides that "[i]f a party has been fully heard on

_____

[3] The contentions plaintiff improperly raises for the first time in her reply papers, e.g., that the Court displayed bias against her in front of the jury, that she was precluding from asking certain questions of potential jurors during voir dire and that the Court failed to instruct the jury on the use of restraints as punishment, will not be considered by this Court.

an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Rule 50(a)(2) provides, in relevant part, that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." Rule 50(b) provides, in relevant part, that "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment– or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged– the movant may file a *renewed* motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." (Emphasis added). Since it is undisputed that plaintiff never moved for judgment as a matter of law at any time before her case was submitted to the jury, she did not satisfy the procedural requirements of Rule 50 and, therefore, relief under that rule is unavailable to her.

In any event, judgment as a matter of law under Rule 50 may only be granted "if there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against the moving party." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (quotations, alterations and citation omitted); see also Cash v. County of Erie, 654 F.3d 324, 333

10

(2d Cir. 2011), cert. denied, — S. Ct. —, 2012 WL 895977 (Mar. 19, 2012) ("[A] Rule 50 motion may be granted only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been compelled to accept the view of the moving party." (quotations, emphasis and citations omitted)); Cross v. New York City Transit Authority, 417 F.3d 241, 248 (2d Cir. 2005) ("[A] Rule 50 motion must be denied unless the evidence is such that, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." (quotations and citation omitted)). "In ruling on a motion for judgment as a matter of law, [the court] must * * * consider the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences from the evidence that the jury might have drawn in that party's favor." Diesel, 232 F.3d at 103. The court "cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute [its] judgment for that of the jury." Id.

Considering the evidence in the light most favorable to defendants, the evidence was legally sufficient to support the jury's verdict in favor of them on the issue of liability with respect to plaintiff's Eighth Amendment excessive force claim. Accordingly, plaintiff's motion seeking relief pursuant to Rule 50 is denied.


B.    Rule 59

Since plaintiff is *pro se*, however, her motion will be construed as also being brought pursuant to Rule 59 of the Federal Rules of Civil Procedure.

After a jury trial, a court may grant a new trial "for any reason for which a new trial has

11

heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Rule 59(b) provides that "[a] motion for a new trial must be filed no later than 28 days after the entry of judgment." Since judgment was entered against plaintiff on June 28, 2010 and she filed her motion on July 19, 2010, her motion is timely under Rule 59(b).

### 1. Weight of Evidence

"A district court may grant a new trial pursuant to Rule 59 even when there is evidence to support the jury's verdict, so long as the court 'determines that, in its independent judgment, the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice.'" AMW Materials Testing, Inc. v. Town of Babylon, 584 F.3d 436, 456 (2d Cir. 2009) (quoting Nimely v. City of New York, 414 F.3d 381, 392 (2d Cir. 2005)); see also Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 417-18 (2d Cir. 2012). "The standard for ordering a new trial is therefore somewhat less stern than that for entering judgment as a matter of law * * *." AMW Materials Testing, 584 F.3d at 456. Although "[o]n new trial motions, the trial judge may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner * * * trial judges must exercise their ability to weigh credibility with caution and great restraint * * * and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." Raedle, 670 F.3d at 418 (quotations and citations omitted); see also DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998) (holding that although a new trial may be granted even if there is substantial evidence supporting the jury's verdict and a trial judge is free to weigh the evidence himself or herself, and need not view it in the light most favorable to the

verdict winner, the court should only grant a Rule 59 motion when the jury's verdict is "egregious" and "should rarely disturb a jury's evaluation of a witness's credibility.") Accordingly, courts must accord a "high degree of deference * * * to the jury's evaluation of witness credibility" and should only disturb jury verdicts "with great infrequency." <u>Raedle</u>, 670 F.3d at 418. Based upon the evidence presented at trial, the verdict in favor of defendants on the issue of liability was not egregious or a miscarriage of justice. Accordingly, to the extent plaintiff challenges the weight of the evidence, her motion is denied.

2.     Exclusion of Evidence

Rule 42(b) of the Federal Rules of Civil Procedure "affords a trial court the discretion to order separate trials where such an order will further convenience, avoid prejudice, or promote efficiency." <u>Amato v. City of Saratoga Springs, N.Y.</u>, 170 F.3d 311, 316 (2d Cir. 1999). "[B]ifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue * * *." <u>Id.</u> Since the litigation of the issue of liability would eliminate the need to litigate the issue of damages in the event a verdict was rendered in favor of defendants, which was the case here, I exercised my discretion to bifurcate the trial of this action.

Notwithstanding my decision to bifurcate the trial, during the liability phase of the trial, plaintiff testified, *inter alia*, that she sustained the following injuries as a result of the alleged assault of her on April 27, 2003: black eyes, (T. 57, 132); severe, chronic migraine headaches, (T. 51, 171); scratches on her arms, (T. 32); spinal and back problems, including eleven purportedly broken discs (T. 120-21, 130); an injury to her throat, (T. 168); and two (2) broken

13

ribs, (T. 171). In addition, plaintiff testified, *inter alia*, that during the alleged assault, she was

hurt "very, very badly;" she was punched in the face; her fingers were separated and her jaw was

pushed in while she was in a "hog-tied" position; and she was hit in the back with a blunt object.

(T. 43, 134-35,170). Furthermore, plaintiff's medical records pertaining to the treatment she

received by the jail's nurse following the alleged assault, as well as photographs depicting

plaintiff three (3) days after the incident, neither of which showed plaintiff with black eyes, were

received into evidence at trial. (T. 31-32, 78, 131-33, 157-61, 187). Moreover, plaintiff was

afforded the opportunity to cross-examine Dr. Geraci, the administrator of the Jail Medical Unit,

regarding the records of her treatment during her incarceration at the jail after the incident.

Accordingly, contrary to plaintiff's contentions, she was not deprived of an opportunity to testify

regarding the injuries she purportedly sustained as a result of the alleged assault or to present

documentary evidence establishing the existence of those injuries. Plaintiff was not, however,

permitted to testify or proffer any evidence during the liability trial regarding the seriousness or

permanency of those injuries on the basis that such matters are relevant only to the issue of

damages, not liability. Moreover, plaintiff was not permitted to testify as a layperson regarding

the diagnosis and prognosis of her injuries, issues on which she was not competent to testify. In

addition, plaintiff was not permitted to proffer a photocopy of an undated photograph allegedly

depicting her condition, which contained the writing of an unidentified person, into evidence. (T.

78-79).

Even assuming, *arguendo*, that this Court's evidentiary rulings limiting the evidence of

plaintiff's injuries at the liability phase of the trial were erroneous, a new trial is not warranted

because the error did not affect plaintiff's substantial rights. See Marcic v. Reinauer

Transportation Companies, 397 F.3d 120, 124 (2d Cir. 2005) (holding that a new trial is warranted "only if an erroneous [evidentiary] ruling affected a party's substantial rights," i.e., errors to which contemporaneous objections were made must be "clearly prejudicial to the outcome of the trial" or errors to which contemporaneous objections were not made must be "so serious and flagrant that [they] go[] to the very integrity of the trial."); Lore v. City of Syracuse, 670 F.3d 127, 155 (2d Cir. 2012) ("[A]n erroneous evidentiary ruling warrants a new trial only when 'a substantial right of a party is affected,' as when 'a jury's judgment would be swayed in a material fashion by the error." (quoting Arlio v. Lively, 474 F.3d 46, 51 (2d Cir. 2007)); Gierlinger v. Gleason, 160 F.3d 858, 871 (2d Cir. 1998) ("The trial court has considerable discretion in determining whether to admit or exclude evidence * * * [and] '[e]rror may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected. . . .' Fed. R. Evid. 103(a)."); see also Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence– or any other error by the court * * *– is ground for granting a new trial * * *. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.")

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause [of the Eighth Amendment], the core judicial inquiry is * * * whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); see also Wilkins v. Gaddy, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010) (per curiam) ("The 'core judicial inquiry' * * * [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm.'" (quoting Hudson)). In Hudson, the Supreme Court "aimed to shift the 'core judicial inquiry' from the extent of the injury to the nature of the force– specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins, 130 S. Ct. at 1179 (quoting Hudson, 503 U.S. at 7, 112 S. Ct. 995).

Accordingly, "the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Hudson, 503 U.S. at 7, 112 S. Ct. 995 (quotations and citation omitted). However, "[i]n determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7, 112 S. Ct. 995. Thus, although "[t]he absence of serious injury is * * * relevant to the Eighth Amendment inquiry, [it] does not end it." Hudson, 503 U.S. at 7.

The Second Circuit has interpreted Hudson to require both a subject and objective component to an excessive force claim under either the Eighth Amendment or the Fourteenth Amendment (applicable to pretrial detainees). See Murray v. Johnson # 260, 367 Fed. Appx. 196, 198 (2d Cir. Feb. 22, 2010). "The subjective condition is satisfied by showing that the defendant had a 'sufficiently culpable state of mind'- the core inquiry being 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7-8, 112 S. Ct. 995). "To satisfy the objective

16

condition, one must show that the resulting harm or deprivation was sufficiently serious." Murray, 367 Fed. Appx. at 198. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated[,] * * * whether or not significant injury is evident." Hudson, 503 U.S. at 9, 112 S. Ct. 995. However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10, 112 S. Ct. 995 (quotations and citation omitted); see also Murray, 367 Fed. Appx. at 198 ("[A] claim of excessive force may be established even if the victim does not suffer serious or significant injury, provided that the amount of force used is more than *de minimis*, or involves force that is repugnant to the conscience of mankind." (internal quotations and citations omitted)). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins, 130 S. Ct. at 1178. "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he had the good fortune to escape without serious injury." Id.

As previously noted, plaintiff was permitted to testify regarding her injuries and medical records pertaining to plaintiff's treatment at the jail following the April 27, 2003 incident, as well as photographs depicting plaintiff three (3) days following the incident, were admitted into evidence at trial. The jury found in favor of defendants on the subjective component of plaintiff's Eighth Amendment, thus rendering the objective component of that claim, i.e., the seriousness of plaintiff's injuries, irrelevant. In light of all of the evidence in the record, including, *inter alia*, plaintiff's testimony about the injuries she sustained and that she had

17

slashed her arm with a spoon while housed on suicide watch and argued with Officer Montalbano just prior to the alleged assault; testimony from the officers that plaintiff needed to be restrained because, while housed on suicide watch at the jail, she became agitated and argumentative, and started yelling, being verbally abusive, jumping around, threatening to throw urine and toilet water and spitting at the officers and that plaintiff continued to struggle throughout the incident; and the admission into evidence of plaintiff's medical records from the jail following the April 27, 2003 incident and the photographs depicting plaintiff three (3) days after the incident, the limitation of evidence pertaining to the plaintiff's injuries was not clearly prejudicial to the outcome of the trial, nor so serious or flagrant as to have affected the integrity of the trial. Accordingly, plaintiff's motion for a new trial is denied.

### 3.    Failure to Charge

Rule 51(c)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] party who objects to * * * the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Rule 51(d)(1) provides, in relevant part, that "[a] party may assign as error: * * * (B) a failure to give an instruction, if that party properly requested it and– unless the court rejected the request in a definitive ruling on the record– also properly objected." Thus, "Federal Rule of Civil Procedure 51 requires that an objection to a question on a verdict sheet or to jury instructions be made * * * before the case is submitted to the jury." Countryman v. Farber, 340 Fed. Appx. 703, 704 (2d Cir. July 27, 2009) (summary order); see also Jarvis v. Ford Motor Company, 283 F.3d 33, 56-7 (2d Cir. 2002) (holding that in order to avail itself of relief under Rule 51, "a party must object before the jury

18

retires to deliberate."); <u>John Fabick Tractor Co. v. Lizza & Sons, Inc.</u>, 298 F.2d 63, 65 (2d Cir. 1962) (holding that since the defendant failed to object to the jury charge, any challenge to the charge was not available to him). "The purpose of [] Rule [51] is to allow the trial court an opportunity to cure any defects in the instructions before sending the jury to deliberate." <u>Jarvis</u>, 283 F.3d at 60 (quoting <u>Fogarty v. Near N. Ins. Brokerage, Inc.</u>, 162 F.3d 74, 79 (2d Cir. 1998)); <u>see also</u> <u>U.S. v. Lease</u>, 346 F.2d 696, 703 (2d Cir. 1965) ("An objection [to the jury charge] before the case went to the jury would have enabled [the defendant] to point out the alleged deficiencies now claimed to exist and would have allowed the trial court to [correct the error]."); <u>Blair v. Cullom</u>, 168 F.2d 622, 624-5 (2d Cir. 1948) (holding that an objection to a jury charge "must be taken in order that the judge may clarify or correct his [error] before the jury retires." (quotations, alterations and citation omitted)). "[O]bjections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error." <u>Jarvis</u>, 283 F.3d at 60 (quoting <u>Palmer v. Hoffman</u>, 318 U.S. 109, 119, 63 S. Ct. 477, 87 L. Ed. 2d 645 (1943)). A general objection to the instructions or verdict sheet does not satisfy Rule 51. <u>Countryman</u>, 340 Fed. Appx. at 704; <u>see also</u> <u>Jarvis</u>, 283 F.3d at 54.

Nonetheless, Rule 51(d)(2) provides that "[a] court may consider an error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." Thus, a court "may review jury instructions and verdict sheets for 'fundamental' error even when a litigant has not complied with the Fed.R.Civ.P. 51 objection requirements." <u>Jarvis</u>, 283 F.3d at 62; <u>see also</u> <u>Countryman</u>, 340 Fed. Appx. at 704 (finding that since the defendant did not satisfy Rule 51(c), its challenge to the verdict sheet is reviewed "only for fundamental error."); <u>Shade v. Housing Authority of City of New Haven</u>, 251 F.3d 307, 312

(2d Cir. 2001) ("Where * * * the party fails to object to the instruction before the jury begins deliberations, a subsequent challenge based on that charge should be entertained only if the alleged errors are 'fundamental[,]' * * * [or] "to prevent a miscarriage of justice.") "Fundamental error is more egregious than the 'plain' error that can excuse a procedural default in a criminal trial, * * *, and is 'so serious and flagrant that it goes to the very integrity of the trial.'" Jarvis, 283 F.3d at 62 (quoting Shade, 251 F.3d 307 at 313); see also SCS Communications, Inc. v. Herrick Co., Inc., 360 F.3d 329, 343 (2d Cir. 2004) (accord).

It is undisputed that plaintiff never: (1) objected (a) to the Court's failure to instruct the jury regarding the "actual occurance [sic] of injuries," (Mot., at 2), or regarding an Eighth Amendment conditions of confinement claim or (b) to the omission of an Eighth Amendment conditions of confinement claim from the verdict sheet; or (2) requested a jury instruction relating to those issues, as required by Rule 51. Accordingly, plaintiff's challenges to the jury charge may be reviewed only for fundamental error. See, e.g. Farrar v. Town of Stratford, 391 Fed. Appx. 47, 49 (2d Cir. Aug. 26, 2010) (reviewing the challenged instruction for fundamental error only because plaintiff had failed to object to the instruction).

In her first statement of her claims, plaintiff indicated that she was asserting only (3) claims: (1) the September 5, 2001 assaults ("the first claim"), which was subsequently dismissed based upon her failure to exhaust available administrative remedies; (2) a claim relating to events that occurred on April 27, 2003 ("the second claim"); and (3) a July 29, 2004 incident, which was not raised in her original complaint and which she subsequently abandoned by failing to include it in her amended complaint. (Docs. 25 and 31). Although, liberally construed, plaintiff's second claim can be read to assert not only an excessive force Eighth Amendment

claim, but also a potential conditions of confinement Eighth Amendment claim challenging the constant supervision of inmates while on suicide watch and the denial of a mattress, shower and a change of "suicide dress" for thirty (30) days, in a subsequent letter to Magistrate Judge Orenstein, filed May 10, 2005, plaintiff indicated that her claims were based upon only three (3) incidents: one on September 5, 2001, one on April 27, 2003 and one on July 29, 2004. (Doc. No. 26). There is no indication in that letter that plaintiff was pursuing an Eighth Amendment conditions of confinement claim, which clearly did not occur on a particular date but over a period of time of thirty (30) days or more. Nor is there any indication that plaintiff pursued an Eighth Amendment conditions of confinement claim at any time during discovery. Moreover, in her amended complaint, filed after discovery had been closed, plaintiff substituted named defendants for certain "John Doe" defendants; alleged that on April 27, 2003, defendants violated her Eighth and Fourteenth Amendment rights by "brutally beat[ing]" her; and then set forth the identical first and second claims provided in her previous narrative statements of her claims. Moreover, in her final narrative statement of her claims plaintiff only "attest[ed] to her previous narrative statement in which she asserted the fact that [defendants] were negligent in their duty as officers and used excessive and unnecessary force, **in that they beat the plaintiff severely**. [sic] On April 27, 2003." (Doc. No. 96) (emphasis in original). No Eighth Amendment conditions of confinement claim was asserted by plaintiff, or can even be implied, in that final narrative statement of her claims.

In her opposition to defendants' motion for summary judgment, plaintiff indicated that she was asserting only two (2) claims: one relating to the September 5, 2001 incident and another relating to events that occurred on April 27, 2003. (Doc. Nos. 105 and 116). Nonetheless,

21

plaintiff again made reference to alleged facts that for over a thirty (30) day period prior to April 27, 2003, she had been forced to utilize the toilet and remove her suicide dress in front of male officers and to wear the same suicide dress, and had been deprived of showers, soap, mattresses and bedding. (Id.) No conditions of confinement claim was addressed by defendants in their motion for summary judgment; plaintiff never indicated, *inter alia*, that she exhausted available administrative remedies with respect to any such claim; and neither this Court nor the Second Circuit considered such a claim to have been raised by plaintiff in this action. (Doc. Nos. 117 and 125).

On December 2, 2009, Magistrate Judge Tomlinson reopened discovery, that had been closed for more than four (4) years, for the limited purpose of allowing plaintiff to submit questions tailored to the April 27, 2003 incident to be answered under oath by defendants Nolan, Keirnan and Aitken. There is no indication that plaintiff ever sought any discovery with respect to a potential Eighth Amendment conditions of confinement claim at that time.

At a final pretrial conference held before me on May 24, 2010 pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, the parties were advised that the jury trial of plaintiff's remaining Eighth Amendment claim relating to the alleged assault on April 27, 2003 would be bifurcated and that the liability phase of the trial was scheduled for June 14, 2010.[4] (Doc. No. 174). Plaintiff never indicated at that time that she was pursing any Eighth Amendment conditions of confinement claim, nor did she ever seek to modify the Pretrial Order at any time.

On June 2, 2010, defendants submitted proposed jury instructions relating to an Eighth

---

[4] Those rulings were recited in an electronic minute entry in accordance with Rule 16(d) of the Federal Rules of Civil Procedure, hereinafter referred to as the Pretrial Order.

Amendment excessive force claim only. (Doc. No. 184). Plaintiff never objected to those instructions on the basis that they failed to include an Eighth Amendment conditions of confinement claim; filed any jury instructions including an Eighth Amendment conditions of confinement claim; nor otherwise indicated to the Court or defendants at any time prior to trial that she was pursing an Eighth Amendment conditions of confinement claim. Moreover, at trial, plaintiff never objected to the failure to charge the jury regarding an Eighth Amendment conditions of confinement claim or to the omission of such a claim from the verdict sheet.

It is clear that throughout these proceedings, neither the Courts nor any party ever deemed this action to include an Eighth Amendment conditions of confinement claim. Moreover, defendants would be prejudiced by allowing a new trial on such a claim because no discovery was taken in relation to an Eighth Amendment conditions of confinement claim, nor were defendants afforded an opportunity to file a dispositive motion pertaining to such a claim, i.e., seeking dismissal, *inter alia*, based upon plaintiff's failure to exhaust available administrative remedies. Moreover, the prejudice to defendants cannot be cured at this stage, almost eight (8) years after the commencement of this action and more than six (6) years after discovery was completed, without further delaying the ultimate resolution of this action. Accordingly, the Court's failure to charge the jury with respect to such a claim and to include such a claim on the verdict sheet does not constitute fundamental error.

Moreover, Rule 16(d) of the Federal Rules of Civil Procedure provides that "[a]fter any conference under this rule, the court should issue an order reciting the action taken. This order controls the court of the action unless the court modifies it." Rule 16(e) further provides, in relevant part, that "[t]he court may hold a final pretrial conference to formulate a trial plan, * * *.

23

The court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Rule 16, thus, "provides the district courts with a powerful mechanism, to organize and expedite litigation. The pretrial conferences contemplated by the Rule create an indispensable opportunity to clarify and delimit issues to be tried and to establish a timetable for the proceedings as a whole." Potthast v. Metro-North Railroad Co., 400 F.3d 143, 153-4 (2d Cir. 2005) (quoting Senra v. Cunningham, 9 F.3d 168, 170 (1st Cir. 1993)). "As a result, the district court may bar any issue that was foreseeable but not raised in a pretrial order or conference." Id. at 154; see also Rockwell International Corp. v. United States, 549 U.S. 457, 475, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007) (holding that a final pretrial order "supersede[s] all prior pleadings and control[s] the subsequent course of the action." (quotations and citations omitted)); Local 282, International Brotherhood of Teamsters v. Pile Foundation Construction Co., No. 09-cv-4535, 2011 WL 3471403, at * 2 (E.D.N.Y. Aug. 5, 2011) (holding that absent manifest injustice, "a party's failure to include a legal theory or defense in the pre-trial order results in its subsequent abandonment or waiver."); Katt v. City of New York, 151 F. Supp.2d 313, 346 (S.D.N.Y. 2001), aff'd sub nom Krohn v. New York City Police Dept., 372 F.3d 83 (2d Cir. 2004) (accord).

In determining whether to amend or modify a pretrial order, courts should consider the following factors: "(1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (3) the extent of disruption of the orderly and efficient trial of the case; [] (4) the bad faith or willfulness of the non-compliant party[;] [and] [5] [p]rejudice to the party seeking amendment or modification of the order * * *, as a trial court should not refuse to modify a pre-trial order where manifest injustice will result." Potthast, 400 F.3d at 153 (quoting

24

Rapco, Inc. v. Comm'r, 85 F.3d 950, 953 (2d Cir. 1996)); see also Katt, 151 F. Supp. 2d at 346 (holding that a court's discretion to modify a pretrial order "is limited to cases in which modification would insure the efficient resolution of trial and, most importantly, minimize prejudicial surprise." (quotations and citation omitted)). "Furthermore, * * * though 'a court may permit the pretrial order to be amended when the danger of surprise or prejudice to the opposing party is small and a failure to amend might result in an injustice to the moving party. . . . if the evidence or issue was within the knowledge of the party seeking modification at the time of the [pretrial] conference . . . then it may not be allowed.'" Potthast, 400 F.3d at 153 (quoting 6A Wright & Miller, Federal Practice and Procedure § 1527 (2d ed. 1990)) (alterations in original); see also Katt, 151 F. Supp. 2d at 346 ("Finding a waiver pursuant to Rule 16(e) is particularly appropriate where * * * a party knew or should have known of an issue * * *, yet failed to raise the issue *either* in a pretrial order *or* at the final pretrial conference." (emphasis in original)). A final pre-trial order "is not to be changed lightly * * * [and] [t]hat which is not alleged in the Pre-Trial Order is generally deemed waived." Commerce Funding Corp. v. Comprehensive Habilitation Services, Inc., No. 01 Civ. 3796, 2005 WL 1026515, at * 6 (S.D.N.Y. May 2, 2005).

Since plaintiff had ample opportunity to pursue an Eighth Amendment conditions of confinement claim from the very beginning of this case, yet she did not: (a) indicate during the final pretrial conference, or at any other time throughout the six (6) year course of the proceedings, that she intended to pursue such a claim; (b) object to the final Pretrial Order; or (c) ever seek to modify the Pretrial Order to include an Eighth Amendment conditions of confinement claim, she effectively abandoned any such claim. See, e.g. Katt, 151 F. Supp. 2d at 347 (finding the case to "be the poster child for Rule 16(e)" where defendants, "notwithstanding

almost six years of procedural case history," failed to raise their defense in either of the two pretrial orders or in any pretrial conference, "either of which alone would be sufficient to bar th[e] defense at trial," and only raised the issue on a motion for a directed verdict at the close of the plaintiff's case). Any prejudice to plaintiff does not rise to the level of injustice because plaintiff had ample opportunity prior to trial to pursue an Eighth Amendment conditions of confinement claim, but failed to do so. Accordingly, a new trial is not warranted based upon the failure to charge the jury on an Eighth Amendment conditions of confinement claim.

III.     Conclusion

For the foregoing reasons, plaintiff's motion for a new trial is denied.

The Clerk of the Court is directed to service notice of entry of this Order on all parties in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* plaintiff at her last known address, see Fed. R. Civ. P. 5(b)(2)(C).

SO ORDERED.

Sandra J. Feuerstein
United States District Judge

Dated: April 19, 2012
        Central Islip, New York